UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THOMAS JEWELL CARR, Plaintiff,

v. Civil Action No. 3:16-cv-P748-DJH

OFFICER BUCKLEY *et al.*, Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Jewell Carr, a pretrial detainee, filed a *pro se* complaint under 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the failure to train claim against Defendant Louisville Metro Government[1] and the three federal constitutional claims against Defendant Buckley in his individual capacity to proceed. The remaining claims and Defendants will be dismissed from this action. Further, as to the proceeding claims, the Court will stay this action pending final disposition of the state criminal case against Plaintiff.

**I. SUMMARY OF CLAIMS**

Plaintiff names the following six Defendants in this action: (1) Officer Buckley, a metro police officer at "(LMD) Jefferson County"; (2) Thomas B. Wine, the Commonwealth Attorney

---

[1] Plaintiff named the City of Louisville as a Defendant in this action. In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as the Louisville/Jefferson County Metro Government (Louisville Metro Government). *See* http://www.louisvilleky.gov. Therefore, the separate governmental entity of the City of Louisville no longer exists. *See Cross v. Louisville Police Dep.*, No. 3:15CV-874-GNS, 2016 WL 3129261, at *3 (W.D. Ky. June 2, 2016). The Court will construe the claims against the City of Louisville as being brought against the merged Louisville Metro Government.

for Jefferson County; (3) Courtney Straw, an Assistant Commonwealth Attorney for Jefferson County; (4) Judge Haynes, a district court judge for Jefferson County, Kentucky; (5) Louisville-Jefferson County Public Defender Corp; and (6) "City of Louisville/State of Kentucky." Plaintiff sues the four individuals in both their individual and official capacities. The remaining two Defendants he sues in their official capacity. As relief, Plaintiff seeks "200-million dollar's" and "Lawyer recommandation's/ Depending on settlement offer if any."

According to Plaintiff, Defendant Buckley and some other officers responded to a 911 caller reporting that "(4-subject's with gun's entered their home) as well as stated '3-black-female's' are 'Assaulting her,' then stated '2-Black-male's,' followed by saying 'We watching out the window now & there is at least 16-people outside and they all jumping on her.'" Plaintiff states that the victim and other witnesses at the scene made statements that "'Caller's' had a 'Gun.'" Plaintiff states that Defendant Buckley and the other officers ignored statements given to them and "'refused' to locate (9-1-1 caller's) question them for statements & check weapon for 'DNA' from 'Victim' because 'Victim' had a bloody nose & mouth as well a 'HUGE-knot' on her 'forehead' as if she had been 'Pistol-whipped.'" According to Plaintiff, Defendant Buckley talked to the first witness, who was a black female

> who pointed out the 'Victim/White-Female,' which came to his 'conclusion' the 'victim-White-Female' was 'DATING' the '1st contact-witness/Black-female's' (uncle) which would be a 'Black-male' as his (subject), therefore; (Assuming-& Racial-Profiling) the situation, 'mis-leading' himself as well other officer's to 'ignore' (any-statement's) outside of (her boyfriend-A BLACK MALE) which is 'why' officer's (never) got statement's from '9-1-1- caller's' & 'Immediately' began searching the area for myself 'before' i (returned) to the scene 'self-Willingly' because I did 'Nothing-Wrong.'

Plaintiff states that the victim voiced that she did not want to press charges and did not want to be bothered. Plaintiff states that this made the officers upset and mad.

2

Plaintiff states that Defendant Buckley took statements from other witnesses. According to Plaintiff, at the end of the investigation during a phone conversation, Defendant Buckley "admitted (No-Witnesses, witnessed 'Accused' Assault-Victim) and (Assumed) once 'again' that 'victim' was being 'Relucktant' and trying to keep the 'Accused' out of trouble because 'victim' wanted to 'NOT' press charges & would 'NOT' say . . . that 'Accused' Assaulted-her." Plaintiff states that Defendant Buckley changed "the statement in 'Citation' as well 'Testified-under oath'" to lock Plaintiff up and have him indicted. Plaintiff contends that he was falsely arrested and charged.

Plaintiff states that Defendants Wine and Straw "continuously" call and write letters to Plaintiff's "fiancée/victim" trying to get her to change her statement and say that Plaintiff assaulted her. According to Plaintiff, these Defendants have threatened his "fiancée/victim" with prosecution if she continues to write to Plaintiff. Plaintiff states that she writes him letters about how she is being "Harrassed & threaned" and how it has caused her to be "hurt/confused and feeling 'insulted.'" Plaintiff states that Defendants Wine and Straw flash false evidence, "photo's of victim/my fiancée" to mislead the judge to believe that Plaintiff caused her injuries. Plaintiff contends that he is being judged by his past, and that his past does not make him guilty of today's allegations. Plaintiff asserts that he is innocent of the charges.

Plaintiff complains that his "fiancée/victim" was forced to stay outside the courtroom while Defendant Buckley testified falsely against him. Plaintiff also complains that Defendant Haynes would not allow his "fiancée/victim" to testify at the probable cause hearing. Plaintiff contends that if she had been allowed to testify, she would have shown that Defendant Buckley's statements were false. Further, Plaintiff asserts that Defendant Haynes found probable cause based on false testimony. Plaintiff states that Defendant Haynes revoked his probation and

denied him shock probation after serving six months. Plaintiff states that Defendant Haynes also let Plaintiff's probation officer testify against him.

As to Defendant Louisville-Jefferson County Public Defendant Corp., Plaintiff states that he has had five different attorneys and has filed complaints with the Kentucky Bar Association about his attorneys, but "still receive[s] 'Negative-outcomes' or 'None at All.'" Plaintiff asserts that he has been lied to by a secretary in this Defendant's office, neglected by counselors, insulted by counselors, lied to by counselors at this office, "'Denied' motion's to be filed by 'Attorney's,'" had his messages ignored, and had conflicts with attorneys in this Defendant's office.

Plaintiff states that his first attorney left the office and moved to New York. Thereafter, Plaintiff was represented by a second attorney who only talked briefly to Plaintiff once right before his court hearing. This attorney, according to Plaintiff, told Plaintiff that he was making a deal with the prosecutor on another charge. Plaintiff represents that he informed this attorney that he wanted a fast and speedy trial "so everything can be taken care of all at once." Plaintiff states that the attorney represented he would file such a motion. According to Plaintiff, after that, this second attorney never contacted Plaintiff to discuss his case, never returned Plaintiff's calls, and never filed a motion for a speedy trial. Plaintiff states that when he called to speak with this attorney, he was informed by Defendant Louisville-Jefferson County Public Defendant Corp. that this attorney was out sick. Plaintiff asserts that this was a lie because Plaintiff later found out that this attorney had been suspended.

Plaintiff states that a "step-in' Attorney" represented him in court in July. This third attorney, according to Plaintiff, informed Plaintiff that she had spoken with Plaintiff's fiancé and his fiancé denied all of the allegations against Plaintiff. Plaintiff states that he had a fourth

4

attorney at his next court date who also told him that he had spoken with Plaintiff's fiancé, and his fiancé had denied the allegations against Plaintiff. This fourth attorney, according to Plaintiff, stated that he was going to file a motion to dismiss Plaintiff's case and that everything would be "wrapped up & over" by September 2016.

On August 31, 2016, according to Plaintiff, he called the public defender's office and was informed that he was now being represented by a fifth attorney. Plaintiff states that he spoke with this attorney, and she informed him that no dismissal motion had been filed. According to Plaintiff, she further stated that she did not believe that Plaintiff had been told a motion to dismiss his case would be filed, and she believed that Plaintiff was lying about the motion. Plaintiff states that she refused to file only certain motions for Plaintiff.

As to the "City of Louisville/State of Kentucky," Plaintiff contends that it is responsible for the poor training of the other Defendants. Further, Plaintiff asserts that this Defendant is responsible for the actions of the other Defendants.[2]

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

---

[2] The Court notes that Plaintiff includes an allegation against this Defendant in which he asserts that it is responsible for Plaintiff "Being Assaulted & held-Hostage by other inmate's while incarcerated." Plaintiff includes no facts in his complaint regarding this allegation; thus, it will not be addressed herein. The Court notes that Plaintiff filed a separate lawsuit in this Court in which he raises this issue. *See Carr v. Louisville Metro Dep't of Corr.*, No. 3:16-CV-747-DJH.

5

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Defendants Haynes, Wine, and Straw

#### 1. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Because Defendants Haynes, Wine, and Straw are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *Id.* at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment[3] acts as a bar to claims for monetary damages against Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169; *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("[Plaintiff's] request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."); *Bennett v. Thorburn*, No. 86-1307, 1988 WL 27524, at *1 (6th Cir. Mar. 31, 1988) (concluding that an official capacity suit against a judge who presided over state court litigation was barred by the Eleventh Amendment).

---

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

7

Accordingly, Plaintiff's official-capacity claims against Defendants Haynes, Wine, and Straw for damages will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

### 2. Individual-Capacity Claims

With regard to Plaintiff's claims against Defendant Haynes, judges are entitled to absolute immunity for actions arising out of all acts performed in the exercise of their judicial functions. *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985). Judicial immunity is embedded in the long-established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). The law is clear that a judge acting within the scope of his official duties and within his jurisdictional authority is absolutely immune from damages liability. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997); *Watts v. Burkhart*, 978 F.2d 269, 272-73 (6th Cir. 1992). This immunity confers complete protection from a civil suit. *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995).

A judge is subject to liability only for non-judicial actions or for acts which were judicial in nature but were taken in the "clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. at 11-12; *Ireland v. Tunis*, 113 F.3d at 1440. Whether or not an act is judicial depends on the nature and function of the act. *Ireland v. Tunis*, 113 F.3d at 1440. Two factors are examined to perform this analysis. *Id*. at 1441. The Court must first determine whether the act is "a function normally performed by a judge." *Id*. (quoting *Stump v. Sparkman*, 435 U.S. at 362). The Court must also look at "whether the parties dealt with the judge in his or her judicial capacity." *Id*. Moreover, a judge acts in clear absence of all jurisdiction only if the matter acted upon is clearly

outside the subject matter of his court. *Id.* at 1441; *King v. Love*, 766 F.2d 962, 965-66 (6th Cir. 1985); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984). Acting in error, maliciously, or in excess of his authority is not enough. *Stump v. Sparkman*, 435 U.S. at 356.

The factors used for the functional analysis indicate that the allegedly wrongful acts by Defendant Judge Haynes were judicial in nature. His actions in not allowing a witness to be in the courtroom while another witness was testifying, not allowing a witness to testify, allowing a certain witness to testify, finding probable cause, revoking probation, and denying Plaintiff shock probation are actions normally performed by a judge, and Defendant Haynes dealt with Plaintiff only in his judicial capacity. Further, the complaint gives no indication that Defendant Haynes lacked jurisdiction in presiding over Plaintiff's criminal case. Consequently, the claims against Defendant Haynes are barred by judicial immunity and must be dismissed.

Similar to the doctrine of judicial immunity, prosecutors also are entitled to "absolute immunity from civil liability related to their performance of 'prosecutorial' functions.'" *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Meanwhile, functions which are more 'investigative' or 'administrative' in nature, because they are more removed from the judicial process, are subject only to qualified immunity." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "As the line of absolute-immunity cases make clear . . . a prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state." *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009).

9

Nothing in the complaint suggests that Defendants Wine or Straw were acting in any capacity other than in their role as an advocate for the state in the judicial process. Therefore, Plaintiff's claims against them are barred by prosecutorial immunity and will be dismissed.

### B. Louisville-Jefferson County Public Defender Corp.

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. As such, it has two basic requirements: (1) the deprivation of federal statutory or constitutional rights by (2) a *person* acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). The Public Defenders Office "is an agency of the executive branch of the state government." *See Ex parte Farley*, 570 S.W.2d 617, 620 (Ky. 1978). A state and its agencies, however, are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Because the Public Defenders Office is not a "person" under the Act, the Court will dismiss the claims against it for failure to state a claim upon which relief may be granted.

Additionally, the Eleventh Amendment acts as a bar to all claims for relief against the Public Defenders Office. A state and its agencies, may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-46 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 78l, 782 (l978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern*

10

*v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985."). Accordingly, this Defendant is also immune from suit.

### C. "City of Louisville/State of Kentucky"

As to Defendant "City of Louisville/State of Kentucky," Plaintiff states, "poor-training," and that this Defendant is "responsible for 'Action's' of 'state-officials,' 'Officers,' 'Commonwealth Attorney & Assistant Commonwealth Attorney,' 'Judge Hayne's, [and] 'Louisville-Jefferson County Public-Defender Corp.'" Plaintiff contends that since he is in the "State's-custody," the "City/State" is "'responsible' for 'ALL OFFICIALS' (wrong-doing's)."

#### 1. Commonwealth of Kentucky

To the extent Plaintiff may be asserting a claim against the Commonwealth of Kentucky, such a claim is barred. As previously stated, under the Eleventh Amendment to the U.S. Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. at 146; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 119-20; *Alabama v. Pugh*, 438 U.S. at 782. Further, as previously set forth, the Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x at 857, and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d at 193-94 (citing *Quern v. Jordan*, 440 U.S. at 341); *see Ferritto v. Ohio Dep't of Highway Safety*, 1991 WL 37824, at *2 (The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

11

Accordingly, the claim against the Commonwealth of Kentucky will be dismissed.

### 2. Louisville Metro Government

#### a. *Respondeat Superior* Claims

Plaintiff asserts that the Louisville Metro Government is responsible for the actions of the other Defendants. The Court notes that only one Defendant, Defendant Buckley, is identified as an employee over which Defendant Louisville Metro Government would have any influence or control. When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights,Tex.*, 503 U.S. 115, 120-21 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) ("[A] municipality is not liable under § 1983 for an injury inflicted solely by its employees or agents; the doctrine of respondeat superior is inapplicable. It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983.") (citations omitted). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, as to Plaintiff's claims seeking to hold this Defendant liable for the actions of the other Defendants, Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Defendant Louisville Metro Government, the complaint fails to establish a basis of liability against the municipality as to this claim, and it fails to state a cognizable § 1983 claim.

### b. Failure to Train

In *City of Canton v. Harris*, the Supreme Court addressed municipal liability pursuant to § 1983 when a plaintiff alleges a failure to train. *City of Canton v. Harris*, 489 U.S. 378 (1989). Therein, the Court held that the inadequacy of police training may serve as the basis for § 1983 liability, but limited municipal liability. The Court stated, "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. "Inadequate training may amount to a municipal policy

only if 'the need for more or different training is so *obvious*, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been *deliberately indifferent* to the need.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1049 (6th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. at 390).

In the present case, Plaintiff alleges a failure to train as to Louisville Metro Government. Plaintiff identifies one Defendant as being an employee of this municipal entity, Defendant Buckley. Upon consideration, the Court will allow the claim alleging a failure to train Defendant Buckley to proceed against Defendant Louisville Metro Government.

### D. Officer Buckley

#### 1. Official-Capacity Claims

As discussed above, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 165 (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 690 n.55). Plaintiff's official-capacity claims against Defendant Buckley are actually against his asserted employer, Louisville Metro Government. *Id.* at 166; *see also Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). The Court will therefore construe the official-capacity claims as claims brought against Louisville Metro Government.

As previously stated, when a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights,Tex.*, 503 U.S. at 120-21. Regarding the second issue, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d at 889.

Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Louisville Metro Government, the official-capacity claims against Defendant Buckley will be dismissed from this action.

### 2. Individual-Capacity Claims

#### a. State-law Claims

Plaintiff asserts as to Defendant Buckley, "official-mis-conduct/perjury . . . ." Herein, Plaintiff appears to be seeking criminal charges against Defendant Buckley. "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965). The Court does not have the power to direct that criminal charges be filed against anyone as Plaintiff requests. *Peek v. Mitchell*, 419 F.2d 575, 577–78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). To the extent Plaintiff seeks criminal charges be brought against Defendant Buckley, he fails to state a claim upon which relief may be granted.

Accordingly, the claims regarding official misconduct and perjury will be dismissed from this action.

15

### b. Federal Constitutional Claims

Further, based on the allegations in Plaintiff's complaint, Plaintiff sets forth facts asserting three constitutional claims against Defendant Buckley: (1) a Fourth Amendment claim for false arrest; (2) a Fourth Amendment claim for malicious prosecution; and (3) a Fourteenth Amendment selective prosecution claim based on his assertion of racial profiling. Upon consideration, the Court will allow these three claims to proceed against Defendant Buckley.

### E. *Younger* Abstention

Plaintiff is a pretrial detainee and has not been convicted of the criminal charges that undergird the basis of the proceeding claims against the Louisville Metro Government and Defendant Buckley. "Except in extraordinary circumstances federal courts should 'permit state courts to try state cases free from interference by federal courts.'" *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)). The underlying concern of *Younger* is the "threat to our federal system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

> *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice. When a person is the target of an ongoing state action involving important state interests, a party cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. If the state party files such a case, *Younger* abstention requires the federal court to defer to the state proceeding.

*Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006) (citations omitted).

The Sixth Circuit has held that *Younger* abstention is appropriate "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Id.* In *Wallace v. Kato*, the Supreme Court stated that "[i]f a plaintiff files . . . any . . . claim related to rulings that will likely

16

be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." 549 U.S. 384, 393-94 (2007).

Given the nature of Plaintiff's proceeding claims and the on-going state criminal proceedings against Plaintiff, the Court will stay this action as to the proceeding claims.

### IV. CONCLUSION AND ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) That the official-capacity claims against Defendants Haynes, Wine, and Straw for damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from Defendants who are immune from such relief;

(2) That the individual-capacity claims against Defendants Haynes, Wine, and Straw are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) because Plaintiff seeks monetary relief from Defendants who are immune from such relief;

(3) That the claims against Louisville-Jefferson County Public Defender Corp. are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a Defendant who is immune from such relief;

(4) That the claims against the Commonwealth of Kentucky are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) because Plaintiff seeks monetary relief from a Defendant who is immune from such relief;

(5) That the *respondeat superior* claims against Louisville Metro Government are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(6) That the official-capacity claims and the state-law claims against Defendant Buckley are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(7) That Defendants Haynes, Wine, Straw, Louisville-Jefferson County Public Defender Corp., and Commonwealth of Kentucky are **DISMISSED** from this action since there are no remaining claims against them.

The **Clerk of Court** is **DIRECTED** to terminate Judge Haynes, Commonwealth Attorney Wine, Assistant Commonwealth Attorney Straw, Louisville-Jefferson County Public Defender Corp., and the Commonwealth of Kentucky as Defendants from the docket of this action. The **Clerk of Court** is also **DIRECTED** to change the name of Defendant City of Louisville in the docket of this action to Defendant Louisville Metro Government.

**IT IS FURTHER ORDERED** that the following claims shall proceed:

(1) The failure to train claim against Defendant Louisville Metro Government;

(2) The Fourth Amendment claim for false arrest against Defendant Buckley in his individual capacity;

(3) The Fourth Amendment claim for malicious prosecution against Defendant Buckley in his individual capacity; and

(4) The Fourteenth Amendment selective prosecution claim against Defendant Buckley in his individual capacity.

**IT IS FURTHER ORDERED**, as to the proceeding claims, that this action is **STAYED** pending the final disposition of the criminal case against Plaintiff.

**Plaintiff shall notify the Court in writing within 30 days of the *final* disposition of the state criminal action against him. Plaintiff is WARNED that his failure to do so will result in the dismissal of this civil action.**

Once Plaintiff has notified the Court of the final disposition of the state criminal action against him, the Court will conduct review of these remaining claims pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d at 608.

Date: April 6, 2017

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     Jefferson County Attorney
4415.003